## WESTERN AIR LINES, INC., ET AL. *v.* BOARD OF EQUALIZATION OF THE STATE OF SOUTH DAKOTA ET AL.

No. 85–732.   Argued November 3, 1986—Decided February 24, 1987

O'CONNOR, J., delivered the opinion for a unanimous Court. WHITE, J., filed a concurring opinion, *post*, p. 135.

*Raymond J. Rasenberger* argued the cause for appellants. With him on the briefs were *Rachel B. Trinder* and *C. Westbrook Murphy.*

*Mark V. Meierhenry*, Attorney General of South Dakota, argued the cause for appellees. With him on the brief was *John Dewell*, Assistant Attorney General.*

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case we consider whether the South Dakota Airline Flight Property Tax, S. D. Codified Laws, ch. 10–29 (1982), violates the Airport and Airway Improvement Act of 1982, 49 U. S. C. App. § 1513(d). We conclude that because the South Dakota Airline Flight Property Tax is an "in lieu tax which is wholly utilized for airport and aeronautical purposes," 49 U. S. C. App. § 1513(d)(3), the tax does not violate § 1513(d).

I

The federal provision at issue is part of a series of congressional actions dedicated to improving the Nation's air transportation system. *Aloha Airlines, Inc.* v. *Director of*

─────────

*James E. Landry* filed a brief for the Air Transport Association of America as *amicus curiae* urging reversal.

*James W. McBride* and *Gregory G. Fletcher* filed a brief for the Railway Progress Institute et al. as *amici curiae.*

*Taxation,* 464 U. S. 7, 8–10 (1983). In 1970, following findings that "substantial expansion and improvement of the airport and airway system is *[sic]* required to meet the demands of interstate commerce, the postal service, and the national defense," H. R. Conf. Rep. No. 91–1074, p. 29 (1970), Congress required the Secretary of Transportation to prepare a plan for the development of public airports, and authorized the Secretary to make grants to States and localities for airport development. Airport and Airway Development Act of 1970, Pub. L. 91–258, 84 Stat. 219. Congress also established an Airport and Airway Trust Fund, maintained by federal aviation taxes, to finance airport development projects. § 208, 84 Stat. 250. Soon afterward, Congress acted to limit state taxation of air transportation. Concluding that state passenger use taxes placed "an unnecessary burden on interstate commerce," and had "a stifling effect on air transportation," H. R. Rep. No. 93–157, p. 4 (1973), Congress prohibited such taxes in the Airport Development Acceleration Act of 1973, Pub. L. 93–44, § 7(a), 87 Stat. 90.

In the Airport and Airway Improvement Act of 1982, 96 Stat. 701, Congress added a § 7(d) to the Airway Development Acceleration Act of 1973, prohibiting the imposition of discriminatory property taxes on air carriers. That prohibition, as codified at 49 U. S. C. App. § 1513(d), reads:

"(d) Acts which unreasonably burden and discriminate against interstate commerce; definitions

"(1) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

"(A) assess air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

"(B) levy or collect a tax on an assessment that may not be made under subparagraph (A) of this paragraph; or

"(C) levy or collect an ad valorem property tax on air carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

"(2) In this subsection—

.         .         .         .         .

"(D) 'commercial and industrial property' means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to commercial and industrial use and subject to a property tax levy; . . .

.         .         .         .         .

"(3) This subsection shall not apply to any in lieu tax which is wholly utilized for airport and aeronautical purposes."

The South Dakota Airline Flight Property Tax, which appellants allege violates § 1513(d), was enacted in 1961. Flight property is defined as "all aircraft fully equipped ready for flight used in air commerce." S. D. Codified Laws § 10–29–1(4) (1982). The portion of the value of flight property subject to the tax is based on flight tonnage, flight time, and revenue ton miles, § 10–29–10, and this value is taxed at the "average mill rate," § 10–29–14. The statute also provides that "[t]he taxes imposed by this chapter shall be allocated by the secretary of revenue to the airports where such airlines companies make regularly scheduled landings and shall be used exclusively by such airports for airport purposes . . . ." § 10–29–15.

The South Dakota statute provides that "[f]light property of airline companies operating in the state shall be assessed for the purpose of taxation by the department of revenue and not otherwise," § 10–29–2. Airline flight property is 1 of 10 specific categories of property that are centrally assessed for

purposes of taxation. (The other categories are certain property of railroads, private car-line companies, express companies, telephone companies, telegraph companies, electric, heating, water and gas companies, rural electric companies, rural water supply companies, and pipeline companies. See S. D. Codified Laws chs. 10–28 through 10–37.) Each of these categories was an exception from the general South Dakota scheme of local property tax assessment at the county level. S. D. Codified Laws § 10–3–16 (1982). In 1978, South Dakota exempted from ad valorem taxation all personal property that was locally rather than centrally assessed, § 10–4–6.1.

In May 1983, appellants, four airline companies operating in South Dakota, paid their flight property taxes for the first six months of 1983 under protest. Appellants then sued the appropriate county treasurers for a refund. Appellants alleged that, because airline flight property was subject to taxation while most other personal property was exempt, the South Dakota flight property tax violated §§ 1513(d)(1)(A) and (C). In each case the county answered that the state flight property tax was "utilized wholly for airport and aeronautical purposes and is in lieu of property taxes and is therefore permitted by 49 U. S. C. [App. §] 1513(d)(3)." App. 10–11. Following an unsuccessful request to seven county boards of commissioners to abate and refund flight property taxes paid after the effective date of the Airport and Airway Improvement Act of 1982, appellants sued the county commissions for abatement and refund. App. 17. Finally, appellants appealed the property tax assessment to the South Dakota State Board of Equalization. The Board of Equalization unanimously denied the appeal, holding that "the airline flight property tax is in lieu of personal property tax and is totally utilized for airport and aeronautical purposes, therefore, in conformity with Section [1513](d)(3), this tax is lawful and not a violation of Federal law." Id., at 31. All the lawsuits described above were consolidated in the Circuit Court

for the Sixth Judicial Circuit in Hughes County, South Dakota. That court agreed with the counties and the Board of Equalization that the flight property tax was permitted under § 1513(d)(3). App. to Juris. Statement 19a–21a.

On appeal, the Supreme Court of South Dakota disagreed with the conclusion that the flight property tax was authorized under § 1513(d). 372 N. W. 2d 106 (1985). In order to be an "in lieu tax," the court reasoned, the flight property tax must be a substitute for another tax on flight property. "In the case at bar, however, the tax is not a substitute for an ad valorem personal property tax. It is in fact the first imposition of personal property tax on the airline flight property." *Id.*, at 109. The State Supreme Court affirmed the Circuit Court, however, on an alternative ground. Under §§ 1513(d)(1)(A) and (C), the discriminatory nature of assessment ratios or tax rates applied to airline property is determined by comparison to the ratios and rates applied to other "commercial and industrial property." "Commercial and industrial property" is defined as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to commercial and industrial use *and subject to a property tax levy.*" § 1513(d)(2)(D) (emphasis supplied). Because locally assessed personal property was not subject to a property tax levy, the State Supreme Court concluded that such property "cannot be included as commercial or industrial property for comparison under either" §§ 1513(d)(1)(A) or (C). 372 N. W. 2d, at 110. Because appellants' claims under § 1513(d) were based on a comparison between flight property and property no longer subject to a tax levy, the court concluded that the claims must be rejected.

South Dakota Supreme Court Justice Henderson concurred in the court's interpretation of the "in lieu tax" provision, but dissented from the court's interpretation of " 'commercial and industrial property.' " The State Supreme Court holding, Justice Henderson observed, permitted " 'greater discrimina-

tion when the [commercial and industrial] property is com-
pletely exempt than when it is taxed, but at a lower rate.'"
*Id.*, at 112, quoting *Northwest Airlines* v. *State Board of
Equalization*, 358 N. W. 2d 515, 517 (1984).   Such an inter-
pretation of the federal antidiscrimination provisions was un-
reasonable, Justice Henderson concluded.   "Since the level
of assessment on commercial and industrial personal property
is zero, the level of assessment of the airlines' personal prop-
erty must be reduced to zero." 372 N. W. 2d, at 112.

In their jurisdictional statement to this Court appellants
challenged the Supreme Court of South Dakota's interpreta-
tion of "commercial and industrial property" under § 1513(d).
Appellees defended the judgment on the basis of the same
reasoning used by the Supreme Court of South Dakota.   We
noted probable jurisdiction, 475 U. S. 1008 (1986).   Follow-
ing oral argument, we requested supplemental briefing from
the parties, and called for the views of the United States, on
the following questions: (1) Is the question whether a state
tax is an "in lieu tax which is wholly utilized for airport and
aeronautical purposes," one of state or federal law, and "(2) If
federal law governs the question whether a tax is an in lieu
tax under § 1513(d)(3), is the South Dakota Airline Flight
Property Tax . . . an 'in lieu tax' under § 1513(d)(3)?"   479
U. S. 958 (1986).   Because our conclusions on these two
questions resolve this case, we do not reach the question of
the interpretation of "commercial and industrial property"
under § 1513(d).

## II

The parties and the United States agree that the ques-
tion whether a state tax is an "in lieu tax which is wholly
utilized for airport and aeronautical purposes," under § 1513
(d)(3), is ultimately one of federal law.   The general princi-
ple that, absent a clear indication to the contrary, the mean-
ing of words in a federal statute is a question of federal law
has especial force when the purpose of the federal statute

is to eliminate discriminatory state treatment of interstate commerce. Indeed, in *Aloha Airlines, Inc.* v. *Director of Taxation*, 464 U. S., at 13–14, this Court held that a state legislature's characterization of a tax could not shield the tax from application of another subsection of § 1513. In the present case, as in *Aloha Airlines, supra,* we must examine the "purpose and effect" of the state tax in light of the policy embodied in the federal provision.

Congress has given us little material with which to interpret the in lieu tax exception. The provision was added to the Act at conference, and there is no legislative history specifically discussing it.* The language of § 1513(d)(3) it-

---

*The United States and appellants have directed our attention to a 1975 Report of the House Committee on Interstate and Foreign Commerce on H. R. 10979, the Railroad Revitalization and Regulatory Reform Act of 1976 (4–R Act). As we note *infra,* at 131, the antidiscrimination provisions of 49 U. S. C. App. § 1513(d) were modeled on a similar provision in the 4–R Act. This Report used the phrase "in lieu tax" to describe special taxes on common carriers that operate differently from the generally applicable property tax schemes. H. R. Rep. No. 94–725, pp. 77, 78 (1975). The House Report seems to have used the phrase "in lieu tax" to describe a broad range of taxes. This sliver of legislative history supports our interpretation of the phrase, see *infra,* at 131–132.

Appellants submit an affidavit of John L. Zorack, an attorney who "represent[s] clients in a variety of legislative matters before the United States Congress." App. to Supplemental Brief for Appellants in No. 14560 (Sup. Ct. S. D.) B–1, B–2. Affiant Zorack states that he was "involved"—in an unexplained capacity—in the passage of the legislation that ultimately became § 1513(d). According to affiant Zorack, the "in lieu" provision "was intended to ensure that the Act would not invalidate state taxes which are a legitimate substitute for other taxes on air carrier transportation property and which are not imposed in an effort to tax such property at rates higher than those imposed on other comparable commercial and industrial property." This would be an incongruous justification for the "in lieu" provision, however, since airline property taxes that are not imposed at rates higher than those imposed on other comparable commercial and industrial property are not threatened by the antidiscrimination provisions of § 1513(d). Mr. Zorack adds that the in lieu provision "was inserted to take care of Minnesota's objection to an earlier version." "To my knowledge no other state made any representation at the time that it

self, and the policies reflected in the Airport and Airway Improvement Act of 1982, however, lead us to the conclusion that the in lieu tax provision exempts the South Dakota Airline Flight Property Tax from the restrictions of § 1513(d).

Section 1513(d)(3) uses two characteristics to identify a group of airline property taxes that are exempted from the restrictions of § 1513(d)(1). First, and perhaps most important, to fall under the protection of § 1513(d)(3) a tax must be "wholly utilized for airport and aeronautical purposes." Section 1513(d) is modeled on similar provisions in the 4–R Act and the Motor Carrier Act of 1980. See 49 U. S. C. §§ 11503, 11503a. The legislative history of the antidiscrimination provision in the 4–R Act demonstrates Congress' awareness that interstate carriers "are easy prey for State and local tax assessors" in that they are "nonvoting, often nonresident, targets for local taxation," who cannot easily remove themselves from the locality. S. Rep. No. 91–630, p. 3 (1969). The Department of Transportation had observed that "[s]tate and local governments derive substantial revenues from taxes on property owned by common carriers." *Id.*, at 4. It is this temptation to excessively tax nonvoting, nonresident businesses in order to subsidize general welfare services for state residents that made federal legislation in this area necessary. The ability to use taxes levied on an interstate carrier to subsidize general welfare spending does not exist, of course, when the proceeds are allocated directly and entirely to the benefit of the carrier. Not only is the possibility of discriminatory benefits to state residents

wished to be protected by the in lieu provision," Mr. Zorack concludes. *Id.*, at B–2, B–3. On the basis of this affidavit, appellants argue that to be covered by the in lieu provision a state tax must resemble the Minnesota airflight property tax, which was a substitute for other property taxes previously imposed on airlines. As we note, *infra*, at 133, the interpretation of an "in lieu tax" as a tax that actually replaced a tax previously imposed is admittedly a possible one. Appellants' attempt at the creation of legislative history through the *post hoc* statements of interested onlookers is entitled to no weight, however.

eliminated, but also the specter of discriminatory burdens on the carrier is avoided by the recycling of the tax revenues into the specific facilities used by the carrier.

Second, the phrase "in lieu tax" restricts the protection of § 1513(d)(3) to property taxes applied to the exclusion of any other tax on the property, in other words, to taxes applied in lieu of any other possible property tax. This requirement reinforces the policy reflected in the "wholly utilized for airport and aeronautical purposes" phrase. If the revenues collected pursuant to a property tax are specifically used for the benefit of those from whom the tax was collected, then, as explained above, the tax does not discriminatorily take from some in order to benefit others. If the same property is also subjected to tax used to subsidize general state expenditures, however, then the potential for abuse remains. Two individually nondiscriminatory taxes—a tax used for general welfare spending that meets the assessment ratio and rate restrictions of § 1513(d)(1), and a tax the proceeds of which are devoted entirely to the industry from which it is collected—obviously can become discriminatorily burdensome when combined.

South Dakota levies a tax on airline flight property, the proceeds of which are wholly utilized for airport and aeronautical purposes. See S. D. Codified Laws § 10–29–15 (1982), quoted *supra*, at 126. The South Dakota Airline Flight Property Tax establishes a method of taxing a particular type of property to the exclusion of any other tax on that property. It therefore stands in lieu of the generally applicable ad valorem property tax that had been assessed on most other commercial and industrial property in the State at the time the airline flight property tax was established. The language and logic of § 1513(d)(3), therefore, lead to the conclusion that the South Dakota Airline Flight Property Tax falls under the in lieu tax exemption.

Appellants argue, however, that these characteristics alone are not sufficient for a tax to be exempted by

§ 1513(d)(3). Appellants advocate the position taken by the Supreme Court of South Dakota, that in order to be exempted under this provision a tax must take the place of another tax that historically had been applied to the airline property. The fact that a property tax is applied to the exclusion of all other property taxes is immaterial, appellants assert, unless some past tax was actually replaced by the present tax. Because South Dakota's taxation of airline flight property has always taken the form of the taxation scheme at issue in this case, appellants argue, the South Dakota Airline Flight Property Tax is not a true "in lieu tax."

Admittedly the phrase "in lieu tax" is open to this interpretation. The illogical results of applying such an interpretation, however, argue strongly against the conclusion that Congress intended these results when it drafted § 1513(d)(3).

Under the interpretation appellants advocate, the question whether a tax would be exempted under the in lieu tax provision would, at best, turn on historical fortuity. The identical taxation scheme South Dakota utilizes would be exempted under § 1513(d)(3) if South Dakota had at one time applied some other taxation scheme to airline flight property. Thus, if at one time the proceeds of the airline flight property tax had gone to general state expenditures rather than directly to the benefit of airports and airlines, the present tax would be exempted. Because South Dakota has always chosen to devote its taxes on airline flight property solely to the benefit of those airlines, it is not exempted, according to appellants. Why a State that has consistently chosen to levy, to the exclusion of all other property taxes, a tax utilized wholly for aeronautical purposes should be penalized for its consistency is unexplained.

At worst, appellants' interpretation of § 1513(d)(3) would do no more than place a meaningless hurdle before state legislatures seeking to conform their tax scheme to the requirements of this provision. A closer examination of how this proposed replacement requirement would operate in

practice illustrates the point. Appellants do not suggest—and have no basis upon which to suggest—that in order to be an "in lieu tax" under § 1513(d)(3) the airline flight property tax must have replaced some other tax by the effective date of the federal provision. If one tax must replace another, therefore, the replacement could take place at any time. Moreover, it could not be a condition of § 1513(d)(3) coverage that the "in lieu tax" replace a tax that had met the antidiscrimination restrictions of § 1513(d). If the tax described in § 1513(d)(3) could replace only a tax that met all the requirements of § 1513(d)(1), then § 1513(d)(3) would not be an exemption at all; it would simply add a restriction on how the taxes could be spent with no corresponding latitude on how they may be collected. Ultimately, therefore, South Dakota could satisfy appellants' interpretation of § 1513(d)(3) by simply amending its tax code so that its airline flight property tax took some other form, then the following session substituting for that tax a tax utilized wholly for aeronautical purposes. This exercise of replacing one tax with another, while contributing somewhat to a state legislature's workload, would contribute nothing to the policies of the Airport and Airway Improvement Act.

In sum, the language of § 1513(d)(3), while at first glance ambiguous, should be interpreted in a manner that comports with the policies of the Airport and Airway Improvement Act. That interpretation is that § 1513(d)(3) exempts from the antidiscrimination provisions of § 1513(d)(1) a tax on airline flight property, applied to the exclusion of any other possible tax on that property, the proceeds of which are wholly utilized for airport and aeronautical purposes. Because the South Dakota Airline Flight Property Tax fits this description, it does not violate the antidiscrimination provisions of § 1513(d). For this reason, the judgment of the Supreme Court of South Dakota is

*Affirmed.*

JUSTICE WHITE, concurring.

Neither in responding to appellants' jurisdictional statement nor in their brief on the merits did appellees defend the airlines tax as an in-lieu tax; and as my dissenting vote indicated, I thought it inappropriate to call for further briefing and *sua sponte* pose the in-lieu issue rather than to address what I thought to be the plainly improvident ground on which the South Dakota Supreme Court sustained the tax. But the Court's action is surely within its power, for the in-lieu issue was raised and decided in the South Dakota courts. That question is now before us, and the Court having correctly decided it, I join its opinion.